UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

WALTER WOJTCZAK,

                         Plaintiff,

                -v-

SAFECO PROPERTY & CASUALTY
INSURANCE COMPANIES, KELLY
OWENS, JENNIFER BRODRICK
and HEIDI TRAVERSO,

                         Defendants.

DECISION AND ORDER
08-CV-6436 CJS

_____

INTRODUCTION

This is an action in which Plaintiff, proceeding *pro se*, alleges that Defendants improperly accessed his personal credit and banking information, and defamed him, after he telephoned Defendant Safeco Property & Casualty Insurance Companies ("Safeco") to obtain a quote for automobile insurance. Now before the Court is Defendants' motion for judgment on the pleadings [#13]. For the reasons that follow, the application is granted.

BACKGROUND

The following information is distilled from the Amended Complaint [#5] in this action, as supplemented by two letters from Plaintiff [#8][#9]. On September 11, 2007, Walter Wojtczak ("Plaintiff") telephoned Safeco to obtain a price quote for automobile insurance. Plaintiff spoke to a Safeco employee, Defendant Kelly Owens ("Owens") for approximately one or two minutes. Plaintiff merely inquired about insurance, and did not actually apply for

coverage. During the brief phone conversation, Owens did not provide him any legal disclosures, and Plaintiff did not give Owens permission to access his credit history.[1]

On or about September 20, 2007, Plaintiff received a computer-generated form letter on Safeco letterhead, electronically signed by Owens. According to information provided by Safeco, it appears that defendant Jennifer Brodrick ("Brodrick") was the Safeco employee who actually mailed the declination notice to Plaintiff. The letter stated: "Dear Walter: It was a pleasure speaking with you concerning your insurance needs. Unfortunately, we are not able to place this policy in a Safeco Market. Enclosed is a Declination Notice outlining the reason(s) for our decision." The attached notice indicated that Emerald City Insurance Agency in Seattle, Washington had declined to offer Plaintiff insurance, for the following reasons:

> Credit was a factor in our decision. Other factors, either singly or in combination, influenced this decision including: prior driving record, prior claims history, and driver characteristics. Length of time accounts have been established. Number of bank or national revolving/open accounts. Relationship of balance to high credit on bank/national accounts or other revolving/open accounts.

The notice further stated:

> The information about your credit history that we relied upon was provided by ChoicePoint, a consumer reporting agency. ChoicePoint can provide you with a free copy of your credit report, and can answer questions about that report, but, because ChoicePoint did not make this decision, ChoicePoint will not be able to answer questions about our decision. . . . When you contact ChoicePoint, use the following reference number: 07654123623785.
>
> Because this consumer information adversely affected your ability to obtain insurance with Safeco, all of the companies listed above are providing this notice as required under the Fair Credit Reporting Act. The Fair Credit Reporting Act gives you certain rights regarding information about you. You

---

[1] Plaintiff speculates that Safeco's telephone system somehow began automatically gathering personal information about him even before he began speaking to Owens. (See, [#8]).

2

> have the right, under Section 612, to obtain a free copy of the report from ChoicePoint, as long as you request it within 60 days of receiving this letter. You also have the right, under Section 611, to dispute with them the accuracy or completeness of any information contained in the report.

Plaintiff never obtained a copy of the credit report from ChoicePoint, and therefore he does not know what information it contained.

In addition, the declination notice letter bore a hand-written notation, stating: "Username S351C Password Deannaguido Oldsmobile 88 1954." From this, Plaintiff concludes that Safeco must have determined his secret bank security code, which was 351c. However, there is no indication that Defendants accessed Plaintiff's bank account or took any money from him. (See, [#22]: "[N]o money from my account was stolen to this date."). Further, Plaintiff contends that Safeco must have investigated his daughter, whose name is Deanna Guido. In that regard, Plaintiff states that on September 11, 2007, September 20, 2007, "and other unknown dates," Owens and/or Brodrick "illegally involved" Plaintiff's daughter, by investigating her "to an unknown extent."

Upon receiving the declination notice, Plaintiff complained to Safeco. Plaintiff also filed complaints with the Police Department of Liberty Lake, Washington, where Safeco's offices are located, the Office of the Insurance Commissioner of the State of Washington, the New York State Insurance Department, and the Office of the Sheriff of Monroe County, New York. However, after investigating Plaintiff's claims, none of these agencies took action against Defendants.

Attached to the Complaint is a report by Detective Ray Bourgeois ("Bourgeois") of the Liberty Lake Police Department, dated September 17, 2007, purporting to detail his meeting with Owens and Safeco Security Officer Heidi Traverso ("Traverso") at Safeco's

3

Offices. According to the report, Owens told the investigator that Plaintiff called Safeco earlier in the month and inquired about insuring a 1954 Delta 88 automobile. Owens stated that she gave Plaintiff a verbal disclosure required by the State of New York, concerning her obtaining a credit-based insurance score. Owens further stated that she was in the process of obtaining such a score when Plaintiff declined to provide his social security number. Owens indicated that consequently, she stopped the quote process and subsequently sent Plaintiff a form letter indicating that Safeco would not insure him. Owens denied making the handwritten notations on the letter. Moreover, Owens denied having anything to do with Plaintiff's bank password, and stated that Safeco would not need that information to prepare an insurance quote.

Plaintiff subsequently spoke with Bourgeois by telephone on June 24, 2008, and tape-recorded the conversation. Bourgeois reiterated that as part of his investigation of Plaintiff's complaint, he met with Owens and Traverso. According to Bourgeois, Owens told him that the declination letter was computer generated, and that she did not actually sign the letter or see it before it went into the mail. Additionally, according to Bourgeois, Owens indicated that she did not write on the letter, and that if there was writing on the letter, it was put there after Plaintiff received the letter. Further, Bourgeois stated that Owens denied checking Plaintiff's credit.

On November 9, 2007, James Kolanko ("Kolanko"), an employee of Safeco, sent a letter to the New York State Insurance Department, in response to an inquiry by that agency. Kolanko's letter stated, in relevant part:

> I am responding to your October 29, 2007 inquiry and Mr. Wojtczak's complaint.

4

> On 09-11-2007 Mr. Wojtczak called our national sales center for a price on automobile insurance. To provide a quote it is necessary to obtain information to determine a market and rating tier. As the name and address is put into our Quote & Issue Underwriting system consumer information is automatically accessed through ChoicePoint and downloaded into our scorecard model. Early in the process our sales representative was able to determine Mr. Wojtczak was not eligible for coverage in any of our companies. He was advised of this and written confirmation with legal notice was mailed to him outlining the reasons for the declination.
>
> It should be noted that we are not privy to Mr. Wojtczak's credit report. ChoicePoint would have returned an Insurance Bureau Score to the underwriting scorecard, but the number would not be displayed. Also, we did not have his driver's license number to obtain a Motor Vehicle Report (MVR). A name and address is sufficient for a Comprehensive Loss Underwriting Exchange report, but the copy he provided shows there were no 'subject' claims so the vehicle claim history would not have been a factor.

(Safeco Letter dated November 9, 2007).

Based upon the foregoing incidents, Plaintiff maintains that in their responses to investigators, Defendants defamed him by providing false information. For example, Plaintiff maintains that on November 9, 2007, April 9, 2008, "and other unknown dates," Safeco, Owens, and Traverso "disclosed false bad credit information about [him] to N.Y.S. Department of Ins[urance] and Liberty Lake Police Dept., Washington State." (Amended Complaint at 4). According to Plaintiff, such information portrayed him as a "credit risk and [as] having poor credit." Plaintiff further contends that on August 14, 2008, Safeco's "law department" falsely told the Washington State Insurance Commissioner that Plaintiff never had an insurance policy with Safeco, when actually, he had an auto policy with Safeco from 1996 until 1999.[2] Additionally, Plaintiff states that on April 9, 2008, Owens, Traverso, "and possibly Safeco Ins. Lawyers," defamed him to investigators by denying his allegations

---

[2] Plaintiff has submitted a cassette tape purporting to contain a recorded conversation that he had with a Safeco employee named Tika, who confirmed that Plaintiff previously had an automobile insurance policy with Safeco.

5

concerning his bank password, thereby "blaming [him] for a crime they committed." (Amended Complaint at 4). Plaintiff further alleges that Safeco employees made false statements "to cover up that they have in possession my SS#, routing and checking acct #, and now my secret password to my Bank of America account."

In this action, Plaintiff alleges that Defendants improperly accessed his credit and banking information, defamed him, and investigated his daughter. Plaintiff alleges that Defendants' actions constitute crimes and civil rights violations, as well as violations of New York Insurance Law, sections 2802 and 2804, the Fair Credit Reporting Act, and "bank secrecy and privacy laws." The Complaint demands compensatory and punitive damages.

On April 30, 2009, Defendants filed an Answer [#12] to the Complaint. That same day Defendants filed the subject motion [#13], which they designated as a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). Defendants state that the claims for defamation and wire fraud are not pleaded with particularity as to any of the Defendants. Further, Defendants contend that the Complaint's reference to violations of unspecified "bank secrecy and privacy laws" is too vague to state a claim. Additionally, Defendants maintain that the Complaint fails to state a claim under the Fair Credit Reporting Act, since there was no debtor/creditor relationship. Finally, Defendants contend that the Complaint does not state a claim for punitive damages.

In response, Plaintiff complains that the various agencies listed above did not properly investigate his complaints, and refused to provide him with reports of their investigations. (See, Docket No. [#18]). Additionally, he states that Defendants refused to cooperate with the investigations. Plaintiff also reiterates his belief that during his initial telephone call to Safeco, Owens "started a credit check process against [his] will," and

"without reading the New York state disclosure statement that is required." Plaintiff further states that under the Fair Credit Reporting Act, Owens needed a "legitimate reason" to check his credit, and that she had none. Plaintiff also alleges that Defendants' actions violated the Fourth Amendment to the U.S. Constitution and the New York Penal Law. Furthermore, Plaintiff submits various documentation designed to show that he actually has very good credit, as shown by the fact that shortly after his conversation with Owens, he was approved for a car loan. (See, [#22]: "My credit is pristine.").

On June 11, 2009, Plaintiff submitted a letter [#19], requesting an opportunity to file another amended complaint. In that regard, he states that Safeco is attempting to discredit him and to hide evidence of criminal wrongdoing.

On June 29, 2009, Defendants filed reply papers [#20, 21, 22], which reiterate the arguments contained in their moving papers. Defendants also state that Plaintiff's request to file another amended complaint should be denied as futile.

To summarize Plaintiff's claim, he spoke with a Safeco employee for approximately two minutes, and then terminated the call because he did not want to provide personal information. Subsequently, he received a declination notice letter, even though he had not actually applied for coverage. (Docket No. [#22]: "Safeco denied me insurance that I did not ask or apply for."). Additionally, the declination notice letter bore handwritten notations, one of which partly matched his bank PIN number, and one of which was his daughter's name. Since the form declination notice letter indicates that coverage was denied for credit reasons, Plaintiff contends that Defendants accessed his credit information without his permission and without providing him with required disclosures. Additionally, since the letter contained an alpha-numeric sequence that partially matched his bank PIN number, Plaintiff

7

believes that Defendants somehow gained access to his personal bank account. Moreover, since the letter allegedly bore his daughter's name, Plaintiff concludes that Defendants also investigated his daughter.

DISCUSSION

Defendants' motion is purportedly made pursuant to FRCP 12(b)(1) and 12(b)(6). With regard to the Rule 12(b)(1) application, it is well settled that,

> [a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings. A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.

*Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir.2000) (citations omitted).

A Rule 12(b)(6) motion filed after a defendant answers the complaint should be treated as a motion for judgment on the pleadings, under FRCP 12(c). *See, Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir.2001) ("[A] motion to dismiss for failure to state a claim (or one of the other non-waivable defenses under Rule 12(h)) that is styled as arising under Rule 12(b) but is filed after the close of pleadings, should be construed by the district court as a motion for judgment on the pleadings under Rule 12(c).") (footnote omitted).

When "deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6)." *Burnette v. Carothers*, 192 F.3d 52, 56 (1999), *cert. denied*, 531 U.S. 1052 (2000). In ruling upon a motion to dismiss made pursuant to FRCP 12(b)(6), the Court must construe

8

> the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor. Although the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice. To survive dismissal, the plaintiff must provide the grounds upon which her claim rests through factual allegations sufficient to raise a right to relief above the speculative level.

*Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 131 (2d Cir. 2007) (citations and internal quotation marks omitted). In that regard, a complaint must contain "a short and plain statement of the grounds for the court's jurisdiction," as well as "a short and plain statement of the claim, showing that the pleader is entitled to relief." FRCP 8(a).

Moreover, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

### *Alleged Crimes and Constitutional Violations*

Plaintiff alleges that Defendants committed various crimes, such as "obstruction of justice and racketeering." However, Plaintiff lacks standing to pursue any criminal charges against Defendants. *See, Leeke v. Timmerman,* 454 U.S. 83, 85, 102 S.Ct. 69, 70 (1981) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.") (citation omitted). Plaintiff also lacks a basis to pursue constitutional claims against Defendants, since they were not acting under color of state law. In that regard, 42 U.S.C. § 1983 requires "(a) that the defendant is a 'person' acting 'under the color of state law,' and (b) that the defendant caused the plaintiff to be deprived of a federal right." *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S.Ct. 977, 985 (1999) (citation and internal quotation marks omitted).

9

*Fair Credit Reporting Act*

The Complaint alleges that Defendants violated unspecified sections of the FCRA by accessing his credit history without his permission. However, even assuming, as the Court must for purposes of this motion, that Owens and/or Safeco accessed Plaintiff's credit information without his permission, such conduct did not violate the FCRA. In that regard, the FCRA sets forth six permissible circumstances under which a credit reporting agency may furnish a consumer credit report. 15 U.S.C. § 1681b(a). One of those permitted circumstances is where the person seeking the information "intends to use the information in connection with the underwriting of insurance involving the consumer." 15 U.S.C. § 1681b(a)(3)(C). Moreover, a person who is not a credit reporting agency, such as Defendants, may "use or obtain a consumer report" provided that it is for one of the aforementioned six permitted purposes. 15 U.S.C. § 1681b(f). Therefore, Defendants were permitted to "use or obtain" Plaintiff's credit report, since the purpose was "to use the information in connection with the underwriting of insurance involving the consumer."

A case that is directly on point is *Wilting v. Progressive County Mut. Ins. Co.*, 227 F.3d 474 (5th Cir. 2000). In *Wilting*, the Plaintiff sued two insurance companies for violating the FCRA, when, in response to his request for an insurance quote, they accessed his credit history without his permission. In affirming the dismissal of the FCRA claims for failure to state a claim, the court stated:

> Wilting also contends that Progressive and Farmers violated the Act when they obtained his credit report. The Act permits a party to obtain a credit report if it will use the information in connection with the "underwriting" of insurance. 15 U.S.C. § 1681b(a)(3)(C). Although "underwriting" is not defined in the Act, the FTC, in its commentary, defines "underwriting" as:

> An insurer may obtain a consumer report to decide whether or
> not to issue a policy to the consumer, the amount and terms of
> coverage, the duration of the policy, the rates or fees charged,
> or whether or not to renew or cancel a policy, because these
> are all "underwriting" decisions. FTC Commentary on the Fair
> Credit Reporting Act, 16 C.F.R. pt. 600, App.
>
> Wilting argues that neither insurer was engaged in underwriting because he did not ask the insurers to issue a policy. He only requested a quotation. We conclude that the insurers did act as underwriters. In order to "decide whether or not to issue a policy" the insurers had to obtain a credit report to weigh the risks presented by the consumer. They could not decide whether to issue a policy without a credit report and an essential part of providing a quotation is deciding whether or not to issue a policy. Therefore, the insurers properly obtained Wilting's credit report as authorized by the Act.

*Id*. at 476.[3] The facts of the instant case are identical. Consequently, Plaintiff's FCRA claim must be dismissed.

*New York Insurance Law*

Plaintiff contends that Defendants violated New York Insurance Law sections 2802 and 2804 by improperly using his credit information and by failing to notify him that they would check his credit information. However, even if the Complaint alleged technical violations of the those provisions, the State of New York has not provided a private right to sue under those sections of the Insurance Law. *See, Polly Esther's South, Inc. v. Setnor Byer Bogdanoff*, 10 Misc.3d 375, 386-389, 807 N.Y.S.2d 799, 810-812 (N.Y.Sup. 2005) (Explaining why implying a private right of action for violation of the Insurance Law would be inconsistent with the legislative scheme). In that regard, the statute does not provide a right to sue, and implying such a right would be inconsistent with New York's legislative

---

[3] *See also, Davenport V. Farmers Ins. Group*, 378 F.3d 839, 842 (8th Cir. 2004) ("The FCRA does not . . . specifically require insurance companies to notify consumers before obtaining their personal information, nor does it affirmatively permit the procurement of such information without first providing notice to consumers. . . . . Congress[ ] [was] silen[t] with regard to any notice requirement[.]").

scheme, which provides for enforcement of the Insurance Law by the Superintendent of the Insurance Department. *See, Id*. 10 Misc.3d at 387, 807 N.Y.S.2d at 811 ("[I]mplying a private right of action for violation of the relevant provisions of the Insurance Law and Regulations would interfere with the legislative scheme that already provides for review and penalty by the Superintendent of the Insurance Department."); *accord, Jim Mazz Auto, Inc. v. Progressive Cas. Ins. Co.*, Nos. 08-CV-00494(A)(M), 08-CV-00541(A)(M), 08-CV-00566(A)(M), 08-CV-00583(A)(M), 2009 WL 891837 at *3-5 (W.D.N.Y. Feb. 5, 2009). Therefore, the claims under the New York Insurance Law must be dismissed.

*Defamation*

The Complaint purports to state a diversity claim for slander under New York State law. Plaintiff contends that Owens, Traverso, and perhaps others at Safeco, defamed him by telling investigators that he had bad credit,[4] and by indicating that he must have made the handwritten notations on the declination letter.

The Court finds that the defamation claim must be dismissed for lack of subject-matter jurisdiction. For diversity jurisdiction to exist, a plaintiff's claim must appear to involve an amount in controversy of at least seventy-five thousand dollars. 28 U.S.C. § 1332(a). In this regard, courts "recognize a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy," and to overcome such presumption, the court must find "to a legal certainty that the amount recoverable does not meet the jurisdictional threshold." *Scherer v. Equitable Life Assurance*

---

[4]Such allegation is inconsistent with Plaintiff's submissions which indicate that Owens and Traverso told Bourgeois that *no* credit check was performed. Obviously, if no credit check was performed, Owens and Traverso would have no basis to characterize Plaintiff's credit history. Moreover, there is no indication that Brodrick told anyone anything regarding Plaintiff's credit history, or did anything besides mail the form letter to Plaintiff declining coverage.

*Society of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (citations and internal quotation marks omitted). To meet this "legal certainty" standard, "the legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim." *Id*. (citations omitted).

This is a high standard, but the Court believes that it is met here. In that regard, Plaintiff claims that he suffered severe emotional distress, and he seeks damages of at least one million dollars. However, on the facts set forth above, the Court finds to a legal certainty that Plaintiff's defamation claim fails to meet the amount-in-controversy requirement. Plaintiff does not claim to have suffered any monetary loss from the incident, nor does he claim that the alleged defamatory statement caused any particular harm to his reputation or credit standing. In that regard, Plaintiff has submitted statements from various sources indicating that his credit score is favorable. Accordingly, the Court lacks subject-matter jurisdiction over the claim.

Even if the Court had subject-matter jurisdiction, the Complaint fails to state a claim for slander.[5] In that regard, "[t]o state a claim for defamation under New York law, Plaintiff must establish: (1) that a defamatory statement of fact was made concerning [the p]laintiff; (2) that the defendant published that statement to a third party; (3) that the statement was false; (4) that there exists some degree of fault; (5) and that there are special damages or that the statement is defamatory *per se*[.]" *Ello v. Singh*, 531 F.Supp.2d 552, 575 (S.D.N.Y.

---

[5]Defendants contend that the defamation claim should be dismissed because it is not pleaded with particularity, as required by New York Civil Practice Law and Rules ("CPLR") § 3016(a). "In federal court, however, the Federal Rules of Civil Procedure govern the pleading requirements for defamation claims," not the CPLR. *See, Deutsche Asset Mgt., Inc. v. Callaghan*, No. 01 Civ.4426 CBM, 2004 WL 758303 at *12 (S.D.N.Y. Apr. 7, 2004) (Observing that the Federal Rules, not CPLR § 3016(a), governs the pleading of defamation claims in federal court).

2007) (citation and internal quotation marks omitted). "Special damages contemplate the loss of something having economic or pecuniary value." *Liberman v. Gelstein*, 80 N.Y.2d 429, 434-435, 590 N.Y.S.2d 857, 860 (1992) (citations and internal quotation marks omitted). On the other hand, defamation *per se* involves statements: "(i) charging plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman." *Id*., 80 N.Y.2d 429, 435, 590 N.Y.S.2d 857, 860.

Here, it is clear from the face of the complaint that Plaintiff is not alleging defamation *per se*, consequently he must prove special damages. However, it is also clear from the complaint that Plaintiff is not claiming any particular pecuniary harm from the alleged slander, but instead, is claiming only emotional distress. For example, Plaintiff states that after he received the declination letter, he became worried that his credit would be ruined and that he would not be able to live independently. (Complaint at 11). Additionally, he worries that his credit might be ruined in the future: "My credit could be ruined in the future and I have suffered much mental anguish- flare-ups of severe headaches, and anxiety and depression many times since 9-27-07, even now." *Id*. at 18. The Complaint therefore fails to state a claim for slander. *See, Fruchter v. Sossei*, No. 94 Civ. 8586 (LBS), 1996 WL 640896 at *9, n.9 (S.D.N.Y. 1996) (Injury to reputation and "great pain and mental anguish" are not "special damages."); 2 RODNEY A. SMOLLA, LAW OF DEFAMATION § 9:35 (2d ed.) ("Special damages (or 'special harm') consist of injury of a pecuniary nature. Pecuniary or monetary loss may include any injury of financial value to the plaintiff, but the mere mental distress of the plaintiff, even if it results in physical illness, is not sufficient.") (footnotes omitted). Consequently the defamation claim must be dismissed.

*Claim Involving Plaintiff's Bank Account*

The Complaint fails to state a claim concerning Plaintiff's bank account. The allegations in that regard are conclusory, speculative, and highly implausible.

*Claim Involving Plaintiff's Daughter*

Plaintiff contends that Defendants wrongfully investigated his daughter. However, Plaintiff has no standing to bring a claim on behalf of his adult married daughter. Additionally, Plaintiff's allegation that Defendants somehow investigated his daughter "to an unknown extent' are conclusory, vague, and implausible.

CONCLUSION

Defendants' motion to dismiss [#13] is granted and this action is dismissed with prejudice. Plaintiff's request to amend [#19] is denied as moot.[6] The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated:     November 5, 2009
           Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

---

[6]The so-called motion to amend [#19] would be denied in any event, as it is merely a supplemental letter in which Plaintiff complains that Safeco, by attempting to have his case dismissed, is seeking to "swindle money (relief, costs & disbursements)" from him.